UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY JANE ANDREWS, DANIEL BALLOU,
and SHARYN BALLOU,

                Plaintiffs,

v.

TIMOTHY GEIDEL,
EVE GEIDEL,
GEORGETOWN CAPITAL GROUP, INC.,
and
ROYAL ALLIANCE ASSOCIATES, INC.,

                Defendants.
_____

**COMPLAINT
and JURY DEMAND**

Case No.: _____

        Plaintiffs Mary Jane Andrews, Daniel Ballou, and Sharyn Ballou, by their attorneys,

Duke, Holzman, Photiadis & Gresens LLP, for their Complaint against Timothy Geidel, Eve

Geidel, Georgetown Capital Group, Inc., and Royal Alliance Associates, Inc., state and allege as

follows:

**NATURE OF CLAIMS**

1.        This lawsuit is a federal securities action, with related state law claims, on behalf

of plaintiffs who purchased or otherwise acquired fraudulent securities offered for sale by

defendants Timothy Geidel, Georgetown Capital Group, Inc. and Royal Alliance Associates, Inc.,

seeking to pursue remedies under the Securities Act of 1933, 15 U.S.C. § 77a, et seq., Securities

and Exchange Act of 1934, 15 U.S.C. § 78a, et seq., and New York law.

2.        This action seeks declaratory, injunctive, and equitable relief in addition to compensatory damages in redress for defendants' violations of federal and state law.

## JURISDICTION AND VENUE

3.        This court has jurisdiction over the subject matter of the federal law claims in this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Securities and Exchange Act, 15 U.S.C. § 78aa.

4.        This court has supplemental jurisdiction over the subject matter of the state law claims in this action pursuant to 28 U.S.C. § 1367.

5.        This action seeks declaratory, injunctive, and equitable relief in addition to compensatory damages in redress for defendants' violations of federal and state law and punitive damages as allowed under state law.

6.        Venue is proper in this district under 28 U.S.C. §§  1391(b)(1) and (b)(2) because all parties reside in New York and defendants Timothy Geidel, Eve Geidel, and Georgetown Capital Group, Inc. reside in this district and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

7.        Plaintiff Mary Jane Andrews is a New York resident who purchased or otherwise acquired bogus securities offered for sale by Timothy Geidel, Georgetown Capital Group, Inc., and Royal Alliance Associates, Inc.

8.        Plaintiffs Daniel and Sharyn Ballou are New York residents who purchased or otherwise acquired bogus securities offered for sale by Timothy Geidel, Georgetown Capital Group, Inc., and Royal Alliance Associates, Inc.

9.        Defendant Timothy Geidel ("Geidel") is a New York resident who is or was a securities broker and investment advisor with Georgetown Capital Group, Inc. and registered with Royal Alliance Associates, Inc.

10.        Defendant Eve Geidel ("Eve Geidel") is a New York resident who is or was married to defendant Timothy Geidel during the relevant time periods and shared joint bank accounts with him.

11.        Defendant Georgetown Capital Group, Inc. ("Georgetown Capital") is a New York Corporation with a principal place of business at 5330 Main Street, Williamsville, New York  14221.

12.        Defendant Royal Alliance Associates, Inc. ("Royal Alliance") is a Delaware Corporation authorized to do business in New York with its principal place of business believed to be located at One World Financial Center, New York, New York, 10281-1003.


## BACKGROUND

### A.        Royal Alliance, Georgetown Capital and "Wealth Manager" Tim Geidel- Twenty Years of "Servicing" the Public

13.        Royal Alliance is a SEC-registered broker-dealer and investment advisor that is member of Financial Industry Regulatory Authority, Inc ("FINRA") and Securities Investor Protection Corporation ("SIPC").

14.        Royal Alliance's website states that, as of December 31, 2009, it had 1,549 financial advisors, 217 offices nationwide, a gross revenue of $317 million dollars, $41.3 billion in assets under management, and that it is part of the second-largest independent broker-dealer network based on gross revenue.

15.        Geidel was an employee of and/or affiliated with Georgetown Capital from April 1989 until September 2010.

16.        Geidel was a registered representative with Royal Alliance from November 1989 until September 2010.

17.        Geidel has been offering financial services and investment advisory services through Georgetown Capital and Royal Alliance for the past twenty years.

18.        Royal Alliance and Georgetown Capital represented to plaintiffs and the public that Geidel was a fully licensed, certified, and registered investment and financial advisor.

19.        Geidel was an agent with actual and apparent authority to act for and on behalf of Royal Alliance.

20.        Geidel was an agent with actual and apparent authority to act for and on behalf of Georgetown Capital.

21.        Royal Alliance and Georgetown Capital provided Geidel with access to the securities markets.

22.        Royal Alliance and Georgetown Capital provided Geidel with the credentials and credibility to solicit prospective investors.

23.        Royal Alliance and Georgetown Capital facilitated the ability of Geidel to establish a relationship of trust and confidence with plaintiffs and the public.

4

24.     Upon becoming a registered representative of Royal Alliance and based on his affiliation with Georgetown Capital, Geidel possessed the credentials and access to the securities markets necessary to solicit and service the accounts of various employers and institutions.

25.     Royal Alliance and Georgetown provided Geidel with the means and opportunity to identify, solicit, and induce prospective investors, including plaintiffs and other victims, to make investments.

26.     Royal Alliance and Georgetown Capital promoted Geidel to prospective investors so as to instill investors with confidence in his credentials, representations, and trustworthiness.

27.     Georgetown Capital represented to plaintiffs and the public that Geidel, along with its other advisors, are specialized in offering clients professional investment advice and service.

28.     Georgetown Capital represented to plaintiffs and the public that many of its advisors, including Geidel, "have multiple securities registrations and insurance licenses, so they are qualified to offer financial advice on a broader scale."

29.     Royal Alliance and Georgetown Capital represented to and advised plaintiffs and the public that Geidel was  a "Financial Advisor" and  "Wealth Management Team Leader."

30.     Royal Alliance and Georgetown Capital represented to and advised plaintiffs and the public that Geidel had successfully established and was the head of the "Geidel Group" within Georgetown Capital.

31.     Royal Alliance and Georgetown facilitated and enabled Geidel to access the retirements accounts and plans of active and retired members of the Lake Shore Central School District beginning in or about 1991.

32.         Royal Alliance and Georgetown Capital represented to and advised plaintiffs and

the public that they, with Geidel as their agent, strive to advise clients "who have been working

all their lives and are too afraid to retire because they are uncertain about their financial future,"

and that they would "map out a strategy" to achieve financial goals that would take "into

consideration the client's goals, time frame, investment experience and risk tolerance."

33.         Over the course of twenty years, Geidel, working with Royal Alliance and

Georgetown Capital, established a relationship with over 100 investor clients, including

plaintiffs.


**B.      Geidel's Twenty Year Ponzi Scheme as enabled by Royal Alliance and
Georgetown Capital**

34.         Beginning in or before June 1990 until September 2010, Geidel conducted a Ponzi

scheme through the securities and investment advisor services of Royal Alliance and Georgetown

Capital.

35.         Geidel induced, through false representations, assurances, and promises, plaintiffs

and other members of the public to make substantial investments in certificates of deposit and

other so-called securities which he could offer and make available through a special bonus

program offered by Georgetown Capital and Royal Alliance (hereinafter "CD's").

36.         Geidel enticed existing, new, and potential clients through his status and

affiliation and status with Georgetown Capital and Royal Alliance, including the plaintiffs, to

invest in CDs.

37.         Geidel told existing, new, and potential clients, including the plaintiffs, that the

CDs were a safe way to invest money at stable rates of return of 6% and more.

38.         Georgetown Capital provided Geidel with printed promotional materials

promoting the sale of Certificates of Deposit which he used in furtherance of his sale of CD's.

39.         In the fall of 2010, a customer of Geidel, Georgetown Capital, and Royal Alliance

contacted the Georgetown Capital office to make arrangements to cash in part of a certificate of

deposit account Geidel had established for her.

40.         The customer's inquiry led to the revelation that the securities Geidel had been

offering and selling to plaintiffs and members of the proposed Class were unregistered and

fictitious.

41.         The CD's promoted and sold by Geidel to plaintiffs and other investors, while

fictitious, are securities within the Securities Act of 1933 and the Securities and Exchange Act of

1934.

42.         Geidel offered to and did move money from the plaintiffs' bank, investment, and

retirement accounts that were under the management of Royal Alliance and Georgetown Capital

into the CDs.

43.         Geidel offered to and did take cash and checks from the plaintiffs and other clients

to invest in the CDs.

44.         Geidel's conduct is a violation of the securities laws and FINRA rules, and

commonly referred to as "selling away."

45.         Geidel furnished plaintiffs with periodic account statements and summaries that

fraudulently indicated equity and earned interest in the special CDs.

46.        Geidel took all of the foregoing actions while knowing that the CDs that he offered to the plaintiffs and other clients were fictitious and non-existent.

47.        Geidel misappropriated investment funds for the personal use of himself and his wife, co-defendant Eve Geidel.

### C.        Control Person Liability and Failure to Supervise

48.        Royal Alliance and Georgetown Capital owed a duty to oversee and supervise their registered representatives and agents to ensure compliance with the securities laws.

49.        Royal Alliance and Georgetown Capital failed to establish adequate procedures for the review, monitoring, and/or supervision of their registered representatives and investment advisors.

50.        Royal Alliance and Georgetown Capital failed to use due care in the enforcement and/or implementation of and/or failed to adequately enforce and/or implement any procedures that they did have in place to review, monitor, or supervise their registered representatives and investment advisors.

51.        Royal Alliance and Georgetown Capital allowed Geidel to have almost sole and exclusive contact with plaintiffs.

52.        Rather than supervise Geidel, Royal Alliance and Georgetown Capital allowed him to function with almost complete autonomy and, in fact, fostered his ability to solicit clients and work independently without supervision, including that they provided him with grandiose titles such as "Wealth Management Team Leader" and being the head of the "Geidel Group."

53.        In an effort to insulate Royale Alliance and Georgetown Capital from liability for the investment losses of plaintiffs and others, Georgetown Capital spokesman Steve Reszka falsely stated to the media that plaintiffs and other investment victims of Geidel "are told when they sign up, and they are told continually, when you're writing a check, you're writing a check to the brokerage house, clearing house, wherever your investments are.  You never write a check to an individual.  You never write a check even to a specific financial planning firm."

54.        Contrary to Reska's false "blame the victim" claims, defendants Royal Alliance and Georgetown Capital had little, if any, contact with plaintiffs and other investor victims other than through Geidel and failed to warn or caution plaintiffs about writing out checks directly to Geidel.

55.        On September 10, 2010, Royal Alliance wrote to various plaintiffs and investor victims characterizing the securities law violations of defendants merely as Geidel having "accepted loans from two clients...." and that since his termination defendants had learned of other "loans" to Geidel.   Royal Alliance's characterizations are transparent and self-serving denials of responsibility for its failure to monitor and supervise Geidel.

56.        In response to inquiries about their prospects for recovery of their investment losses, Georgetown Capital president Joseph Curatolo has denied defendants Royal Alliance and Georgetown Capital have any responsibility, and sarcastically responded "Good Luck!" before terminating telephone conversations with the victims of the fraud.

57.        Royal Alliance and Georgetown Capital failed to adequately review, monitor, and/or supervise Geidel and his dealings with investors.

58.        Royal Alliance and Georgetown failed to use due care in the review, monitoring, and/or supervision of Geidel.

59.        Royal Alliance and Georgetown Capital failed to use due care in the enforcement and/or implementation of and/or failed to adequately enforce and/or implement any procedures that they did have in place to review, monitor, or supervise Geidel and insure that investors such as plaintiffs were properly protected.

60.        Royal Alliance failed to establish adequate procedures for the review of records of its registered representatives at satellite offices.

61.        Royal Alliance failed to establish adequate procedures for monitoring the activities at its satellite offices.

62.        Royal Alliance failed to use due care in the enforcement and/or implementation of, and/or failed to adequately enforce and/or implement, any procedures that it did have in place to review the records of and monitor the satellite offices to insure that investors such as plaintiffs were properly protected.

63.        Royal Alliance's failure to monitor and supervise Geidel is part of a chronic and ongoing failure by Royal Alliance to comply with its obligations under the securities laws.

64.        On February 26, 2007, the Connecticut Banking Commissioner entered a Consent Order against Royal Alliance which imposed an administrative penalty of $750,000 based on the allegation that Royal Alliance failed to adequately enforce and maintain a system for supervising the activities of its agents reasonably designed to achieve compliance with applicable securities laws and regulations.  The underlying violations were committed by registered representative

Kevin O. Kelley between 1999 and 2004 whereby customers, many of whom were senior

citizens, were defrauded of approximately $4.2 million in a scheme much like Geidel's.

65.        On April 28, 2009, the SEC entered an Order against Royal Alliance for its failure

to reasonably supervise its registered representative David L. McMillen with a view to

preventing and detecting violations of the securities laws between 1999 - 2004 during which time

McMillan operated a Ponzi scheme that defrauded at least 28 investors.  McMillen engaged in a

scheme to defraud nearly identical to Geidel, and Royal Alliance was sanctioned $500,000 for its

failure to develop and implement a system to detect and prevent such conduct.

66.        Royal Alliance has on multiple other occasions been censured and/or fined by the

Securities and Exchange Commission for failing to adopt, implement, and/or reasonably enforce

adequate procedures and/or policies to supervise the activities of its registered representatives.

67.        Royal Alliance's pattern of conduct over the past twenty years, demonstrates a

willful, reckless, and grossly negligent failure to establish, implement, and enforce a reasonable

system to supervise the activities of its representatives.

68.        As a result of the willful, reckless, and grossly negligent conduct by Royal

Alliance the investing public has time and again been subjected to Ponzi schemes and securities

fraud violations by its registered representatives.

69.        But for the breach of duty and violation of the securities laws by Royal Alliance

and Georgetown Capital, Geidel would not have been able to perpetuate a twenty plus (20+) year

Ponzi scheme that has damaged plaintiffs and other members of the proposed Class.

70.        The full extent of Royal Alliance's and Georgetown Capital's wrongful conduct in

the scheme conducted by Geidel over a period of twenty years, including their respective

violations of the federal securities laws and actionable failures to supervise Geidel, cannot be fully known without discovery.

### D.    Losses Sustained by Plaintiffs

71.        Plaintiffs false and fraudulent securities from Geidel.

72.        Plaintiffs and other members of the investing public have purchased CD's from Geidel.

73.        Specific examples of the false and fraudulent sales of securities by Geidel to plaintiffs and other members of the investing public include, but are not limited to, the following sales of CD's:

| | | |
|---|---|---|
| Daniel and Sharon Ballou | October 29, 2005 | $16,000 |
| Daniel and Sharon Ballou | July 27, 2006 | $20,000 |
| Daniel and Sharon Ballou | November 13, 2006 | $  5,000 |
| Daniel and Sharon Ballou | October 22, 2007 | $13,500 |
| Daniel and Sharon Ballou | November 8, 2007 | $ 3,000 |
| Daniel and Sharon Ballou | March 12, 2009 | $12,000 |
| Mary Jane Andrews | September 16, 2005 | $12,500 |
| Mary Jane Andrews | September 19, 2005 | $10,000 |
| May Jane Andrews | October 3, 2005 | $10,000 |
| Mary Jane Andrews | October 20, 2005 | $ 7,500 |
| Mary Jane Andrews | January 19, 2006 | $ 5,000 |
| May Jane Andrews | October 26, 2006 | $ 1,000 |

| Mary Jane Andrews | February 27, 2007 | $ 5,000 |
| May Jane Andrews | February 21, 2008 | $ 4,000 |
| May Jane Andrews | October 17, 2008 | $ 7,700 |

74.     Further investigation is required to determine the full extent of the losses

sustained by plaintiffs and other investor victims of defendants' securities law violations.

**FIRST CAUSE OF ACTION**
**(Violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 77q(a),
and Rule 10b-5, 17 C.F. R. 240.10b-5 As Against Geidel)**

75.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

76.     From approximately 1989 through the present, Geidel directly or indirectly, singly

or in concert, by the use of  the means and instrumentalities of interstate commerce, of the mails,

or the facilities of the national securities exchange, in connection with the purchase or sales of

securities, knowingly or recklessly: (a) employed devices, schemes, and artifices to defraud; (b)

made untrue statements of material fact and omitted to state material facts necessary in order to

make the statements made, in light of the circumstances under which they were made, not

misleading; and/or (c) engaged in acts, practices, and/or courses of business which operated as a

fraud and deceit upon investors, purchasers of securities, and other persons.

77.     Plaintiffs relied upon the statements and representations made by Geidel in

deciding whether to invest, purchase, or otherwise acquire the special CDs and other securities

offered by Geidel, and plaintiffs were damaged by this reliance.

78.        By reason of the foregoing, Geidel has violated and is violating Section 10(b) of

the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 , and plaintiffs are

entitled to judgment against Geidel for compensatory damages an amount to be proven at trial,

plus appropriate interest, court costs, and attorneys' fees.


## SECOND CAUSE OF ACTION
### (Control Liability § 20(a) of the Securities and Exchange Act of 1934 against Georgetown Capital Group, Curatolo, and Royal Alliance)

79.        Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

80.        At all relevant times, Royal Alliance possessed, directly or indirectly, the power to

direct and control Georgetown Capital Group and/or Geidel, and it acted as control person of

Georgetown Capital Group and/or Geidel within the meaning of Section 20(a) of the Exchange

Act.

81.        Royal Alliance knew or should have known that Geidel was engaged in fraudulent

conduct, but failed to take steps to prevent Geidel's primary violation of the securities laws.

82.        At all relevant times, Georgetown Capital possessed, directly or indirectly, the

power to direct and control Geidel, and acted as a control person of Geidel within the meaning of

Section 20(a) of the Exchange Act.

83.        Georgetown Capital Group knew or should have known that Geidel was engaged

in fraudulent conduct, but failed to take steps to prevent Geidel's primary violation of the

securities laws.

84.     Royal Alliance and Georgetown Capital Alliance were culpable participants in Geidel's fraudulent acts and omissions.

85.     By reason of the foregoing, plaintiffs are entitled to judgment against Royal Alliance and Georgetown Capital, jointly and severally, for compensatory damages in an amount to be proven at trial, plus appropriate interest, court costs, and attorneys' fees.

## THIRD CAUSE OF ACTION
### (Fraud Against Geidel)

86.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

87.     As described above, Geidel made representations of fact to plaintiffs which were false.

88.     Geidel knew that such representations were false when he made them and/or he made such representations recklessly without regard for whether they were true or false.

89.     Geidel made such representations to induce the plaintiffs to rely upon them in deciding whether to purchase or otherwise acquire securities and other investments that were fraudulent, non-existent, or otherwise improper.

90.     Plaintiffs justifiably relied upon the representations made by Geidel.

91.     As a direct and proximate cause of Geidel's representations and the reliance thereon by plaintiffs, the plaintiffs sustained damages.

92.     By reason of the foregoing, plaintiffs are entitled to judgment against Geidel for compensatory damages in an amount to be proven at trial, for punitive damages in an amount to be proven at trial, plus appropriate interest, court costs, and attorneys' fees.

## FOURTH CAUSE OF ACTION
### (Conversion Against Geidel)

93.        Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

94.        Plaintiffs had a possessory right and interest in their funds, assets, property, and

investments.

95.        Geidel converted the funds, assets, property, and investments of the plaintiffs and

thereby deprived plaintiffs of the use of such funds, assets, property, and investments.

96.        Geidel acted consciously, willfully, wantonly and maliciously in converting the

funds, assets, property, and investments of the plaintiffs.

97.        As a direct and proximate result of this conduct, Geidel has had use of the funds,

assets, property, and investments that he converted.

98.        By reason of the foregoing, plaintiffs are entitled to judgment against Geidel for

compensatory damages in an amount to be proven at trial, for punitive damages in an amount to

be proven at trial, plus appropriate interest, court costs and attorneys' fees.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment Against Geidel and Eve Geidel)

99.        Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

100.       Geidel and Eve Geidel benefited from the receipt of funds, assets, and/or property

received from plaintiffs and for which Geidel and Eve Geidel did not adequately compensate or

provide value to the plaintiffs.

16

101.        Geidel's and Eve Geidel's enrichment was at the expense of the plaintiffs.

102.        Equity and good conscience require full restitution of the monies received by

Geidel and Eve Geidel from the plaintiffs.

103.        By reason of the foregoing, plaintiffs are entitled to judgment against Geidel and

Eve Geidel for compensatory damages in an amount to be proven at trial, plus appropriate

interest.


## SIXTH CAUSE OF ACTION
**(Respondent Superior/Vicarious Liability Against Georgetown Capital and Royal Alliance)**

104.        Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

105.         Geidel committed the above-described actions and omissions in furtherance of

Georgetown Capital and/or Royal Alliance's business.

106.         Geidel committed the above-described actions and omissions within the scope of

his authority while conducting business for Georgetown Capital Group and/or Royal Alliance's

business.

107.        Georgetown Capital Group and/or Royal Alliance had a duty of reasonable care to

train, supervise, and/or monitor the conduct of Geidel.

108.        Georgetown Capital Group and/or Royal Alliance failed to use reasonable care to

train, supervise, and/or monitor the conduct of Geidel, and this failure resulted in foreseeable

injury to the plaintiffs.

17

109.        Georgetown Capital Group and Royal Alliance knew or should have know of facts that would lead a reasonably prudent person to conduct an investigation which would have uncovered the information about Geidel's wrongful actions and omissions, but failed to do so.

110.        Georgetown Capital Group and Royal Alliance failed to use reasonable care to correct and/or remove Geidel.

111.        The failures and omissions of Georgetown Capital Group and Royal Alliance resulted in foreseeable injury to the plaintiffs.

112.        By reason of the foregoing, plaintiffs are entitled to judgment against Georgetown Capital and Royal Alliance, jointly and severally, for compensatory damages in an amount to be proven at trial, plus appropriate interest, court costs, and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (Constructive Trust Against Geidel and Eve Geidel)

113.        Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

114.        As set forth above, the assets of the plaintiffs have been wrongfully diverted as a result of as a result of fraudulent acts and omissions in violation of the securities laws, breaches of fiduciary duties, conversions and other wrongdoing of Geidel for his own interests and enrichment.

115.        Funds, assets, and other property from the plaintiffs were deposited in joint bank accounts for Geidel and his wife Eve Geidel.

116.        The plaintiffs have no adequate remedy at law.

117.        Due to the fraudulent acts and omissions in violation of the securities laws, fraud, conversions and other wrongdoing of Geidel, the plaintiffs are entitled to the imposition of a constructive trust with respect to any transfer of funds, assets or property received from plaintiffs, as well as any profits in the past and on a going forward basis in connection with the fraudulent CDs and other securities and/or in connection with Georgetown Capital and/or Royal Alliance.

118.        By reason of the foregoing, plaintiffs are entitled to the imposition of a constructive trust against Geidel and Eve Geidel with respect to any transfer of funds, assets, or property received from plaintiffs, as well as any profits in the past and on a going forward basis in connection with the fraudulent CDs and other securities and/or in connection with Georgetown Capital and/or Royal Alliance.

## NINTH CAUSE OF ACTION
### (Accounting Against Geidel and Eve Geidel)

119.        Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

120.        As set forth above, the funds, assets, investments, and/or property of the plaintiffs have been wrongfully diverted as a result of fraudulent acts and omissions in violation of the securities laws, conversions and other wrongdoing of Geidel for his own interests and enrichment.

121.        Funds, assets, and other property from the plaintiffs were deposited in joint bank accounts for Geidel and his wife Eve Geidel.

122.        As set forth above, Eve Geidel was unjustly enriched by the deposit of the funds, assets, investments, and/or property wrongfully deposited into her joint account(s) with Geidel.

19

123.          The plaintiffs have no adequate remedy at law.

124.          To compensate plaintiffs for the amount of monies that Geisel diverted for his own benefit, it is necessary for Geidel to provide an accounting of any transfer of funds, assets, or property received from plaintiffs, as well as any profits in the past and on a going forward basis in connection with the fraudulent CDs and other securities and/or in connection with Georgetown Capital and/or Royal Alliance.

125.          Complete information regarding the amount of such transfers misused and of any profits received by Geidel is within the sole possession, custody, and control of Geidel and Eve Geidel.

126.          By reason of the foregoing, plaintiffs are entitled to an accounting from Geidel and Eve Geidel of:  (a) any transfer of funds, assets, or property received from the plaintiffs and any other Class members; and (b) any profits in the past and on a going forward basis received by Geidel basis in connection with the fraudulent CDs and other securities and/or in connection with Georgetown Capital and/or Royal Alliance.


          **WHEREFORE,** plaintiffs demand relief and judgment against defendants, jointly and severally, as follows:

          A.  Awarding compensatory damages in favor of the plaintiffs against defendants Timothy Geidel, Royal Alliance, and Georgetown Capital, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including appropriate interest;

B.  Awarding punitive damages in an amount to be proven at trial as against defendant Timothy Geidel as allowed by law;

C.  Awarding  compensatory damages in an amount proven at trial as against Timothy Geidel and Eva Geidel, jointly and severely, and such other relief as determined by the Court.

D.  Awarding plaintiffs their reasonable costs and expenses incurred in this action, including counsel fees and expert fees, to the fullest extent permitted by law;

E.  Awarding extraordinary, equitable, and/or injunctive relief as permitted by law and equity; and

F.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues of fact and damages claimed in the foregoing complaint.

Dated:          August 31, 2012
                 Buffalo, New York

                                         Respectfully submitted,

                                         **DUKE, HOLZMAN, PHOTIADIS & GRESENS LLP**
                                         *Attorneys for Plaintiffs*


                                         By  *s/Charles C. Ritter, Jr.*
                                                 Charles C. Ritter, Jr.
                                                 350 Main Street
                                                 Suite 1800
                                                 Buffalo, New York 14202
                                                 (716) 855-1111
                                                 critter@dhpglaw.com